In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00062-CR


______________________________




JOE LOUIS ROBERTS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 3rd Judicial District Court


Anderson County, Texas


Trial Court No. 28459




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Joe Louis Roberts appeals his conviction by a jury for felony driving while intoxicated
(DWI). Roberts waived having the jury assess his punishment, which the trial court set at twenty-five years' imprisonment after Roberts pled "true" to having been previously and finally convicted
of two other felony offenses. See Tex. Penal Code Ann. § 12.42(d) (Vernon 2007) (elevating any
felony to first-degree felony, punishable with a minimum of twenty-five years' incarceration, if two
prior and subsequent felony convictions); Tex. Penal Code Ann. § 49.04 (Vernon 2003) (DWI);
Tex. Penal Code Ann. § 49.09 (Vernon Supp. 2007) (enhanced penalties for subsequent DWI
offenses). Roberts now challenges the evidentiary sufficiency and the propriety of his sentence. We
affirm.

I. Evidentiary Sufficiency

 In his first point of error, Roberts challenges both the factual and legal sufficiency of the
evidence. We have repeatedly warned appellants that the practice of briefing two or more points of
error under a single issue--especially when those points of error require different standards of
review, as is the case here--risks that issue being overruled as multifarious. See, e.g., In re
Guardianship of Moon, 216 S.W.3d 506, 508 (Tex. App.--Texarkana 2007, no pet.); Woodall v.
State, 216 S.W.3d 530, 533 n.3 (Tex. App.--Texarkana 2007, pet. granted); Dickey v. State, 189
S.W.3d 339, 341 (Tex. App.--Texarkana 2006, no pet.); Newby v. State, 169 S.W.3d 413, 414 (Tex.
App.--Texarkana 2005, no pet.). The Twelfth Court of Appeals, from which this appeal was
transferred, has previously issued subtle yet similar criticisms of appellants who raise multifarious
points of error. (1) See, e.g., Cochran v. State, 78 S.W.3d 20, 27 (Tex. App.--Tyler 2002, no pet.); Hill
v. State, 78 S.W.3d 374, 377 (Tex. App.--Tyler 2001, pet. ref'd); Stewart v. State, 39 S.W.3d 230,
232 (Tex. App.--Tyler 1999, pet. denied); Murphy v. State, 864 S.W.2d 70, 72 (Tex. App.--Tyler
1992, pet. ref'd). We, however, will decline the opportunity to overrule Roberts' first point of error
on this basis, in favor of resolving substantive issues. (2)

 A. The Applicable Standards

 In assessing the legal sufficiency of the evidence to support a criminal conviction, we
consider all the evidence in the light most favorable to the verdict and determine whether, based on
that evidence and reasonable inferences therefrom, a rational juror could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979);
Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); Guevara v. State, 152 S.W.3d 45, 49
(Tex. Crim. App. 2004). The reviewing court must give deference to "the responsibility of the trier
of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 318-19. In reviewing the
sufficiency of the evidence, we should look at "events occurring before, during and after the
commission of the offense, and may rely on actions of the defendant which show an understanding
and common design to do the prohibited act." Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim.
App. 1985). Each fact need not point directly and independently to the guilt of the appellant, as long
as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. 
See Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Johnson v. State, 871 S.W.2d
183, 186 (Tex. Crim. App. 1993). Circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish
guilt. Guevara, 152 S.W.3d at 49. On appeal, the same standard of review is used for both
circumstantial and direct evidence cases. Id.; Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007).

 In a factual sufficiency review, the evidence is reviewed in a neutral light rather than (as in
a legal sufficiency review) in the light most favorable to the verdict. Roberts v. State, 220 S.W.3d
521 (Tex. Crim. App. 2007). Evidence can be factually insufficient in one of two ways: (1) when
the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly
unjust, and (2) when the supporting evidence is outweighed by the great weight and preponderance
of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. Watson v.
State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). A reversal for factual insufficiency cannot
occur when "the greater weight and preponderance of the evidence actually favors conviction!" Id.
at 417. Although an appellate court reviewing factual sufficiency has the ability to second-guess the
jury to a limited degree, the review should still be deferential, with a high level of skepticism about
the jury's verdict required before a reversal can occur. Cain v. State, 958 S.W.2d 404, 407 & 410
(Tex. Crim. App. 1997).

 B. Analysis

 Sergeant Jeff Powell, a twelve-year veteran of the Palestine Police Department, testified first
for the State. Powell was working from ten in the evening until six in the morning on May 15, 2004. 
During his shift, he responded to a call from fellow Palestine police officer Darren Goodman, who
had stopped Roberts' vehicle for suspicion of DWI. Powell, after identifying appellant in court as
being the same person whom police had stopped on the night in question, testified Roberts "had a
strong odor of alcohol on him[,]" which the officer later explained as coming from Roberts' breath. 
Powell also noted that Roberts slurred his speech. Powell then asked Roberts to submit to several
field sobriety tests. 

 During the horizontal gaze nystagmus test, Powell noticed Roberts' eyes showed a lack of
smooth pursuit in each eye, demonstrated nystagmus at maximum deviation in each eye, and
exhibited the onset of nystagmus in each eye before reaching the forty-five degree mark. Therefore,
according to Powell, Roberts showed all six indicators (out of a maximum of six indicators) for
intoxication during this test. 

 During the alphabet recitation test, Roberts reportedly stopped at the improper location and
added an extra letter into the alphabet. Such performance suggested Roberts might have lost
sufficient mental faculties to perform similar divided-attention tasks, such as operating a motor
vehicle. 

 During the walk-and-turn test, Powell testified that Roberts was unable to maintain his
balance during the instructional phase of the test, that Roberts took the incorrect number of steps,
and that Roberts made an improper turn while performing the test. Similarly, during the one-legged-stand test, Roberts was unable to maintain his balance for longer than fifteen seconds. 

 Powell ultimately concluded that the totality of Roberts' performance of these field sobriety
tests provided probable cause to believe Roberts was intoxicated. Roberts was therefore arrested for
DWI and taken to jail. At the jail, Roberts refused to provide a specimen of his breath for purposes
of analyzing its alcohol concentration, a factor that jurors are permitted to consider in determining
whether a person may have been intoxicated at the time of the alleged offense. See Tex. Transp.
Code Ann. § 724.061 (Vernon 1999). Roberts also reportedly became belligerent toward the
officers, a personality change or manifestation that Powell testified was consistent with someone
who might be intoxicated. Under subsequent examination, Powell conceded that each field sobriety
test is, in isolation, not a fool-proof method for determining or predicting whether an individual is
intoxicated. However, Powell testified that his ultimate decision to arrest Roberts for DWI was
based on the totality of the latter's performance during the field sobriety tests. 

 Goodman, a sixteen-year law enforcement veteran and currently a reserve deputy with the
Anderson County Sheriff's Department, testified next. Goodman had known Roberts since the two
were in school together. Goodman testified that he performed the initial traffic stop of Roberts'
vehicle after Roberts made a turn without signaling. See Tex. Transp. Code Ann. §§ 545.104,
545.106 (Vernon 1999). When Goodman made contact with Roberts, the former noticed a strong
odor of alcohol coming from the latter. Roberts admitted to having had "a few" drinks and appeared
to be staggering around. (3) Goodman also described Roberts as "getting a little angry" with the officer,
which Goodman attributed to the fact that Roberts was likely intoxicated. Goodman testified that
he then decided to call another officer to assist in having Roberts perform field sobriety tests. 

 Viewing the State's evidence in the light most favorable to the jury's verdict, the jury had
before it evidence that suggested Roberts (1) had operated a motor vehicle, (2) in a public place,
(3) at a time period when he had lost the normal use of his mental and/or physical faculties,
(4) because he had consumed one or more alcoholic beverages. See Tex. Penal Code Ann. § 49.04. 
Such evidence is sufficient to support the jury's verdict in this case. Additionally, we cannot say that
the jury's assessment of the evidence in this case, and its determination that Roberts was guilty of
the charged offense, is either against the great weight and preponderance of all the evidence admitted
at trial or resulted in a verdict that is "manifestly unjust." Accordingly, the evidence is both legally
and factually sufficient to support the jury's verdict. We overrule Roberts' multifarious contention
to the contrary.

II. Disproportionate Sentence

 In his second point of error, Roberts contends his twenty-five-year sentence is
disproportionate to his crime. The Eighth Amendment to the United States Constitution prohibits
the infliction of cruel and unusual punishment to persons convicted of a crime. See U.S. Const.
amend. VIII.

 In the lower court, Roberts did not object to his sentence on the ground that it was
disproportionate to his crime (or on any other ground) either at the time it was imposed or by filing
a motion for new trial. To preserve a complaint for appellate review, an appellant must have
presented to the trial court a timely request, objection, or motion stating the specific grounds for the
ruling desired. Tex. R. App. P. 33.1(a)(1)(A): Rhoades v. State, 934 S.W.2d 113, 119 (Tex. Crim.
App. 1996). An objection must be made in a timely manner, and a motion for new trial is an
appropriate way to preserve for review a claim for disproportionate sentencing. Delacruz v. State,
167 S.W.3d 904, 905 (Tex. App.--Texarkana 2005, no pet.). Roberts did not raise this issue at his
sentencing hearing, in his motion for new trial, or even in his notice of appeal. Therefore, this issue
has not been preserved for appellate review.

 Yet even if the contention had been preserved for review, there is no evidence in the record
comparing the sentences imposed on persons in Texas with sentences imposed against defendants
in other jurisdictions who committed a similar offense. See Alberto v. State, 100 S.W.3d 528, 530
(Tex. App.--Texarkana 2003, no pet.); Fluellen v. State, 71 S.W.3d 870, 873 (Tex.
App.--Texarkana 2002, pet. ref'd).

III. Conclusion

 For the reasons stated, we overrule Roberts' points of error and affirm the trial court's
judgment.




 Jack Carter

 Justice


Date Submitted: October 11, 2007

Date Decided: November 21, 2007


Do Not Publish
1. Pursuant to its docket equalization authority, the Texas Supreme Court transferred this case
from the Tyler Court of Appeals. See Tex. Gov't Code Ann. § 73.001 (Vernon 2005); Miles v.
Ford Motor Co., 914 S.W.2d 135, 137 (Tex. 1995).
2. To its credit, the State's brief offered a substantive and thorough analysis of the evidentiary
sufficiency in this case.
3. Powell had earlier testified that Roberts had admitted to having consumed two beers on the
evening in question. 



 Loun
denied shooting LaPelley in the back and testified that he shot as he was "rotating back around." 
After LaPelley had been shot, Fancher screamed at Loun: "Why did you do this?" Fancher testified
Loun looked at her, shrugged his shoulders, and walked off. (13) After he fired the shots, Loun then
took out the round in the chamber of the gun, removed the magazine, and put the gun on top of the
bed covers. (14) 

 We note the record contains some evidence that a person may have reasonably believed
deadly force was necessary. LaPelley was 6'3'', 190 pounds, and legally drunk. It is uncontested that
LaPelley and Loun had a brief struggle over the gun. 

 Loun testified he was watching television when the door flew open. Loun testified that he
grabbed the gun off the coffee table, (15) chambered a round, and then held the gun beside his leg. 
Loun testified he then told LaPelley to "[s]top, and get out of the house." (16) When LaPelley "kept
coming," Loun pointed the gun at LaPelley. Loun testified he had both hands on the weapon. Loun
and LaPelley were "almost face-to-face by the time [LaPelley] finally squared up with" Loun. 
LaPelley struck at the gun. Loun testified at trial that he "just saw a dark, metallic-colored object"
in LaPelley's hand. (17) Loun testified he was taught (18) "never let someone else gain control of a
weapon," and testified he did not believe hand-to-hand combat was an option. 

 Loun's testimony concerning the struggle over the gun was corroborated by the other
occupants of the apartment. Fancher testified LaPelley attempted to knock the gun out of Loun's
hand. Zarate then testified LaPelley "swatted or hit" the hand with which Loun was holding the gun. 
Clark testified LaPelley slapped Loun's hand. 

 All of the witnesses testified that the shots were fired close together. Fancher testified that
when Loun recovered his balance, Loun shot LaPelley three times in rapid succession. Zarate
testified the shots were "very close together." Roberson heard a slap and three gunshots in close
succession. 

 The forensic evidence indicates the fatal shots were fired at close range. The autopsy
revealed LaPelley died from wounds inflicted by three bullets. Wade Thomas, a forensic scientist
for the Tyler region of the Texas Department of Public Safety, conducted several tests to estimate
the distance between LaPelley's clothing and the gun. One shot was fired when the gun was between
twelve to thirty inches from LaPelley. A second shot was greater than six inches, but less than
twenty-four inches from LaPelley. A third shot was greater than twelve inches, but a maximum
distance could not be determined. 

 Wiley Lloyd Grafton testified as an expert witness for the defense. Grafton is an associate
professor of criminal justice at the University of Louisiana in Monroe, a former Alcohol, Tobacco,
and Firearms agent, a former United States Treasury agent, and a National Rifle Association
counselor. Grafton testified, "I've made over probably 250 felony arrests in my career, and I never
one time had an individual grab for my firearm when I pointed it at him." Grafton testified such an
action indicated the victim was out of control. Grafton also testified most firearms books and
instructors recommend firing three to four shots because "you may miss a shot." 

 A rational juror could have concluded that deadly force was not immediately necessary to
protect Loun or a third party against the use or attempted use of unlawful deadly force. Nor is the
conclusion so against the great weight and preponderance of the evidence as to be clearly wrong or
manifestly unjust. Although we may not have reached the same conclusion, we will not substitute
our opinion for the jury's conclusion. "Although an appellate court reviewing factual sufficiency has
the ability to second-guess the jury to a limited degree, the review should still be deferential, with
a high level of skepticism about the jury's verdict required before a reversal can occur." Roberts, 220
S.W.3d 524. The evidence is legally and factually sufficient to support the jury's conclusion that
Loun was not entitled to use deadly force.

II. The Error in Modifying the Statutory Instruction on Parole Resulted in Some Harm


 In his third point of error, Loun argues the trial court reversibly erred in failing to give the
statutorily required instruction on parole law. Although the trial court did instruct the jury on the
law concerning parole, the trial court failed to give the statutory instruction. The charge on
punishment at the third trial provided as follows, in pertinent part:

 Under the law applicable in this case, the defendant, if sentenced to a term of
imprisonment, may earn time off the period of incarceration imposed through the
award of good conduct time. Prison authorities may award good conduct time to a
prisoner who exhibits good behavior, diligence in carrying out prison work
assignments, and attempts at rehabilitation. If a prisoner engages in misconduct,
prison authorities may also take away all or part of any good conduct time earned by
the prisoner. 

 It is also possible that the length of time for which the defendant will be
imprisoned might be reduced by the award of parole. 

 It cannot accurately be predicted how the parole law and good conduct time
might be applied to this defendant if he is sentenced to imprisonment, because the
application of these laws will depend on decisions made by prison and parole
authorities. 

 You may consider the existence of the parole law and good conduct time. 
However, you are not to consider the extent to which good conduct time may be
awarded to or forfeited by this particular defendant. You are not to consider the
manner in which the parole law may be applied to this particular defendant. 


 A. The Trial Court Erred in Modifying the Statutory Instruction

 The charge tracks the statutory language with one major exception. Although the charge
informed the jury about the existence of good conduct time, the trial court deleted the paragraph
contained in the statutory instruction informing the jury that the defendant will not become eligible
for parole until the actual time served equals one-half of the sentence imposed. The charge omitted
the following paragraph:

 Under the law applicable in this case, if the defendant is sentenced to a term
of imprisonment, he will not become eligible for parole until the actual time served
equals one-half of the sentence imposed or 30 years, whichever is less, without
consideration of any good conduct time he may earn. If the defendant is sentenced
to a term of less than four years, he must serve at least two years before he is eligible
for parole. Eligibility for parole does not guarantee that parole will be granted. 


Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp. 2008). (19) Loun claims the omission
of the statutory language was error. We agree.

 A trial court commits error when it deviates from the statutorily mandated language by
adding or deleting language. See Villarreal v. State, 205 S.W.3d 103, 105 (Tex. App.--Texarkana
2006, pet. dism'd, untimely filed); Hill v. State, 30 S.W.3d 505, 509 (Tex. App.--Texarkana 2000,
no pet.). The trial court erred in omitting statutorily mandated language.

 B. The Error Resulted in Some Harm

 Finding error in the court's charge, however, merely begins the inquiry. Almanza v. State,
686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on reh'g). We must now determine whether the
resulting harm requires reversal. Id. at 171. The standard of review for errors in the jury charge
depends on whether the defendant properly objected. Mann v. State, 964 S.W.2d 639, 641 (Tex.
Crim. App. 1998); Almanza, 686 S.W.2d at 171 (op. on reh'g); Gornick v. State, 947 S.W.2d 678,
680 (Tex. App.--Texarkana 1997, no pet.). If a proper objection was raised, reversal is required if
the error is "calculated to injure the rights of defendant." Almanza, 686 S.W.2d at 171. In other
words, an error that has been properly preserved is reversible unless it is harmless. Id. If a defendant
does not object to the charge, reversal is required only if the harm is so egregious that the defendant
has not had a fair and impartial trial. Rudd v. State, 921 S.W.2d 370, 373 (Tex. App.--Texarkana
1996, pet. ref'd). 

 The State argues Loun's objection to the charge was inadequate to preserve error. During the
charge conference, Loun's counsel objected. The following colloquy occurred, in pertinent part:

 THE COURT: . . . Any objection from the defense?


 [Defense Counsel]: It is, Your Honor. We submit Defendant's 1 for court
purposes only.


 THE COURT: That is your version?


 [Defense Counsel]: Yes.


 THE COURT: And you are saying I'm not listening to the statutory
conditions of probation and also the issue of -- having served a fixed percentage of
any actual sentence?


 [Defense Counsel]: Yes, sir.


 THE COURT: It might have been something else but those are the two things
we talked about in chambers.


 [Defense Counsel]: Well, the conditions of probation are in the statute and
there has been testimony from the supervisor of the adult probation that these are
always conditions of probation and therefore it should be before the jury. Also --


 THE COURT: Actually, the Legislature didn't make it mandatory. The
Legislature listed which things can be. Now, in practice, virtually every one of the
conditions in your draft meet -- say the same thing the statute says.


 [Defense Counse]: And then after the conditions there is another paragraph
about what happens if a condition of probation is violated. That should be in there. 
Also, down on page two next to the last paragraph it states about the eligibility for
parole. You have allowed it to be in there about parole and good time but you did not
put in there since this is a murder case which is automatically one half sentence must
be served. We ask that that be in there. Other than that, we have no objection to the
charge.


 THE COURT: Thank you. The objections are overruled . . . .


Although the record suggests the defense submitted a proposed charge, i.e., "Defendant's 1," the
record does not contain the proposed charge. The State argues the defense's objection was not
sufficiently specific or distinct enough to make the trial court aware of his complaint. 

 We must first decide whether Loun failed to preserve error when he failed to ensure the
written proposed charge was introduced into the record. The State notes the record does not contain
Loun's proposed charge. In Vasquez v. State, 919 S.W.2d 433 (Tex. Crim. App. 1996), the Texas
Court of Criminal Appeals stated, "[w]e have interpreted articles 36.14 and 36.15 as dealing with
those two distinct situations: an objection to the charge and a requested special instruction,
respectively." Id. at 435 (citing Frank v. State, 688 S.W.2d 863 (Tex. Crim. App. 1985)). In this
case, the defense is complaining about an error in the charge given to the jury, rather than requesting
an additional special instruction. The complaint is that the instruction in the charge is incomplete,
rather than a request for a new instruction. We conclude Article 36.14 should govern error
preservation in this case. Under Article 36.14, the defendant is merely required to object and obtain
an adverse ruling to preserve any error. Id. If the objection was sufficient, the error was preserved
even though the written requested charge was not introduced into the record. See Tex. Code Crim.
Proc. Ann. art. 36.14 (Vernon 2007) ("in no event shall it be necessary for the defendant or his
counsel to present special requested charges to preserve or maintain any error assigned to the
charge . . ."); Rodriguez v. State, 31 S.W.3d 736, 737 (Tex. App.--Houston [1st Dist.] 2000, pet.
ref'd); see also Sibley v. State, 956 S.W.2d 832, 837 (Tex. App.--Beaumont 1997, no pet.) (because
objection preserved error, counsel was not ineffective for failing to submit a written proposed jury
instruction). Therefore, Loun was only required to object and obtain an adverse ruling. 

 The next issue is whether the objection obtained was sufficient to call the trial court's
attention to the error. The State argues the objection was insufficient because it was combined with
a request for a list of community supervision conditions and was not sufficiently specific. We note
an objection can be so vague and multifarious that it fails to give the trial court notice of the
complaint. See Burks v. State, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994). The objection in this
case does not fall into this category of insufficient objections. The objection was sufficient to give
the trial court notice of both complaints. An objection is sufficient if it "isolates the portion of the
charge which is alleged to be deficient and identifies the reason for its deficiency." Taylor v. State,
769 S.W.2d 232, 234 (Tex. Crim. App. 1989). The objection informed the court of the missing
paragraph and requested it be included. It was sufficient to make the trial court aware of the
complaint. The trial court summarized the objection as to whether the charge must inform the jury
of the requirement of "having served a fixed percentage of any actual sentence." Loun preserved
error for appellate review.

 Where charge error has been preserved by objection, reversal is required as long as the error
is not harmless. Abdnor v. State, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). We determine harm
in light of the entire jury charge, the state of the evidence, including contested issues and the weight
of the probative evidence; the argument of counsel; and any other relevant information revealed by
the record as a whole. Mann, 964 S.W.2d at 641; Rudd, 921 S.W.2d at 373. The purpose is to
illuminate the actual, and not just the theoretical, harm to the accused. Rudd, 921 S.W.2d at 373;
Hines v. State, 978 S.W.2d 169, 175 (Tex. App.--Texarkana 1998, no pet.).

 Some harm is shown if this error was calculated to injure the defendant. Almanza, 686
S.W.2d at 171; Aguilar v. State, 914 S.W.2d 649, 651 (Tex. App.--Texarkana 1995, no pet.). The
presence of any harm, regardless of degree, is sufficient to require reversal. Abdnor, 871 S.W.2d at
732. There is no burden of proof on the defendant; our determination is simply made from a review
of the record. Ngo v. State, 175 S.W.3d 738 (Tex. Crim. App. 2005); see Warner v. State, 245
S.W.3d 458, 464 (Tex. Crim. App. 2008). 

 In Hill and Villarreal, this Court found egregious harm when the trial court deviated from
the statutory language on parole law. Villarreal, 205 S.W.3d at 110; Hill, 30 S.W.3d at 509. Our
decision in Villarreal was based, in part, on jury notes indicating the jury had considered how parole
law would be applied to the defendant. See Villarreal, 205 S.W.3d at 105. While there are no jury
notes concerning parole law in this case, Loun presented evidence in support of his motion for new
trial that the jury did consider the application of parole law.

 In support of his motion for new trial, Loun presented testimony from one of the jurors,
Wayne Gibson, that the jury considered how parole would be applied to Loun. Despite being
instructed not to consider how parole law would apply to Loun, the jury apparently considered the
issue. Gibson testified the jury was confused about how much time Loun would actually serve. 
Several members of the jury expressed the opinion that if "you don't give him a lot more he won't
serve hardly any." Gibson testified he believed four years would be sufficient, but he agreed to ten
years when someone stated Loun would only serve one-third of his sentence. 

 The harm analysis in this case is complicated by the fact that Gibson's testimony is
inadmissible evidence. Texas law clearly provides that a juror "may not testify as to any matter or
statement occurring during the jury's deliberations" except for "(1) whether any outside influence was
improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to
serve." Tex. R. Evid. 606(b); see White v. State, 225 S.W.3d 571, 573 (Tex. Crim. App. 2007). A
juror's discussion about the application of the parole law to the defendant's sentence does not
constitute an outside influence. Hines v. State, 3 S.W.3d 618, 623 (Tex. App.--Texarkana 1999,
pet. ref'd); see Richardson v. State, 83 S.W.3d 332, 361-62 (Tex. App.--Corpus Christi 2002, pet.
ref'd). The State, though, failed to object in any way to the admission of this evidence. (20) Because
no objection was made, the evidence was admitted for all purposes. 

 Although the State argued Loun "needs to go to the penitentiary and he needs to go for a long
time," it is clear the jury was considering the lower end of the range of punishment. The jury
submitted a note indicating it was considering "probation." The jury ultimately decided on a term
of ten years. There is evidence the jury in this case was inaccurately informed and misled (21) by the
court's charge. We find that the error in the charge caused some harm. We sustain Loun's third point
of error. 

III. The Trial Court Did Not Err in Refusing to Instruct the Jury About Possible
Conditions of Community Supervision


 Loun's trial counsel requested the trial court to list some of the conditions of community
supervision that could be imposed by the trial court, should the jury recommend a probated sentence. 
On appeal, Loun claims the trial court erred in denying this request. Although a trial court may
provide such an instruction, a trial court is not required to submit a list of potential conditions of
community supervision in its charge. Cagle v. State, 23 S.W.3d 590, 594-95 (Tex. App.--Fort
Worth 2000, pet. ref'd); Cortez v. State, 955 S.W.2d 382, 384 (Tex. App.--San Antonio 1997, no
pet.); McNamara v. State, 900 S.W.2d 466, 467-68 (Tex. App.--Fort Worth 1995, no pet.). Loun's
fourth point of error is overruled.

IV. The Error in Admitting the Prior Testimony of Roberson Resulted in Some Harm

 At the third trial, the trial court admitted the prior recorded testimony of Roberson at the
second trial over the objection of Loun. On appeal, Loun argues the trial court erred in admitting
the evidence because the State failed to show Roberson was unavailable. We review a trial court's
admission of evidence for abuse of discretion. Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim.
App. 2007). A trial court abuses its discretion if its decision is outside the zone of reasonable
disagreement. Id.; Kelly v. State, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992).

 A. The State Failed To Prove Roberson Was Unavailable

 Loun objected to the prior recorded testimony alleging the State failed to make a proper
predicate of availability under Rule 804(b) of the Texas Rules of Evidence. Rule 804(b)(1) provides
"testimony given as a witness at another hearing of the same or a different proceeding" is not
excluded if the witness is unavailable as a witness and "if the party against whom the testimony is
now offered had an opportunity and similar motive to develop the testimony by direct, cross, or
redirect examination." Tex. R. Evid. 804(b)(1). Loun does not dispute that the evidence meets the
requirements of Rule 804; Loun only challenges whether Roberson qualified as unavailable. 

 The State argues Roberson was unavailable under Rule 804(a)(5), which provides a witness
is unavailable if he "is absent from the hearing and the proponent of [his] statement has been unable
to procure [his] attendance or testimony by process or other reasonable means." See Tex. R. Evid.
804(a)(5). At trial, the parties argued as follows:

 [Defense Counsel]: Your Honor, under 804 hearsay exceptions, without them
bringing a witness they have to prove that declarant is unavailable which has not been
proven in this case. That is why we are saying the testimony be excluded based on
hearsay.


 [Prosecutor Biggs]: Your Honor, the witness is unavailable. County can't
pay for him to come back down here from Maine again. He's got prior recorded
testimony.


 THE COURT: Oh, this is the sailor?


 [Prosecutor Atkinson]: This is Rashaan Roberson.


 [Defense Counsel]: That is not one of the reasons that the county cannot pay
for.


 [Prosecutor Atkinson]: I don't think that prior recorded testimony requires
unavailability of the declarant.


 [Defense Counsel]: Rule of evidence 804B.


 THE COURT: Kind of an unusual situation is that witness has testified, has
been subject to cross-examination of this case. The trouble is he wasn't subject to
physical appearance before this jury. Objection is going to be overruled. I sure hope
the State thinks it's on safe ground.


Later in the conversation, the State stated, "We can't force him to come outside the State of Texas. 
I have no way to procure his attendance." The trial court granted the defense a running objection. (22) 
The State does not argue it could not locate Roberson's current address. (23)

 The State must make some good-faith efforts to produce the witness at trial or to show any
efforts would be futile. The State's only explanations in this case were 1) it would be too expensive
and 2) the incorrect legal conclusion the State had "no way to procure his attendance." The State
argues, even though there is no evidence it attempted to subpoena Roberson, it should not be
required to perform a useless act because, according to the State, a subpoena does not reach across
state lines. We note the State "is not required to engage in clearly futile activities before a trial court
can, in its discretion, determine that the State made good-faith efforts to produce a witness at trial." 
Ledbetter v. State, 49 S.W.3d 588, 594 (Tex. App.--Amarillo 2001, pet. ref'd). Compulsory process
for a witness located outside of Texas can be obtained under the "Uniform Act to Secure the
Attendance of Witnesses from Without the State in Criminal Proceedings." See Tex. Code Crim.
Proc. Ann. art. 24.28 (Vernon 1989). The record does not contain any evidence that attempting
compulsory process in this case would be futile. 

 Because there is no evidence of any good-faith efforts, the State failed to show it made good-faith efforts to secure Roberson's presence. This decision is outside the zone of reasonable
disagreement. See Otero-Miranda v. State, 746 S.W.2d 352, 355 (Tex. App.--Amarillo 1988, pet.
ref'd, untimely filed) (mere issuance of unserved subpoenas to secure two Mexican citizen witnesses
not good-faith efforts); Reyes v. State, 845 S.W.2d 328 (Tex. App.--El Paso 1992, no pet.) (asking
witness's family to locate witness in Mexico three days prior to trial not a good-faith effort). The
trial court abused its discretion in admitting the prior recorded testimony.

 B. The Error Resulted in Harm

 Loun urges us to apply the constitutional error harm analysis which requires reversal unless
we can conclude beyond a reasonable doubt that the error made no contribution to the accused's
punishment. Loun, though, has not alleged constitutional error. (24) Rule 44.2(b) of the Texas Rules
of Appellate Procedure provides that we must disregard a nonconstitutional error if it does not affect
a defendant's substantial rights. See Tex. R. App. P. 44.2(b). A nonconstitutional error is harmless
if, after reviewing the record as a whole, we have fair assurance that the error did not have a
substantial and injurious effect or influence in determining the verdict. See Casey, 215 S.W.3d at
885. In determining whether the error resulted in harm, we review the whole record and consider
the nature of evidence supporting the verdict, the character of the alleged error, the extent that it was
emphasized by the State, and how the erroneously admitted evidence might have been considered
in connection with other evidence in the case. See Bagheri v. State, 119 S.W.3d 755, 763 (Tex.
Crim. App. 2003). 

 Roberson was the most favorable eyewitness for the State and the only eyewitness called by
the State. Roberson stated he did not believe LaPelley was a threat to anyone in the apartment. 
Because Fancher did not testify at the third trial, (25) Roberson was the only eyewitness who testified
LaPelley did not pose a threat to anyone. The testimony formed an important part of the State's case. 
During its closing argument, the State emphasized Roberson's testimony. The State argued Roberson
believed LaPelley's presence was "no big deal." We cannot reach a fair assurance that the
inadmissible evidence did not have a substantial and injurious effect or influence on the jury. The
error resulted in some harm to the accused. We sustain Loun's fifth point of error.

V. Conclusion

 We conclude the evidence is legally and factually sufficient. The trial court did not err in
refusing the requested instruction on possible conditions of community supervision. The trial court
did err in omitting a portion of the statutory instruction on good conduct time and eligibility for
parole. This error resulted in some harm to Loun. The trial court also erred in admitting the prior
recorded testimony of Roberson and this error resulted in some harm. Because the reversible errors
occurred during punishment, we reverse the trial court's judgment on punishment only and remand
for a new trial on punishment.




 Bailey C. Moseley

 Justice


Date Submitted: September 8, 2008

Date Decided: November 20, 2008


Publish


1. The Texas Code of Criminal Procedure was amended in 2005 to permit a trial court, when
the jury fails to agree on punishment, to declare a mistrial only on punishment. See Act of May 20,
2005, 79th Leg., R.S., ch. 660, § 1, 2005 Tex. Gen. Laws 1641 (current version at Tex. Code Crim.
Proc. Ann. art. 37.07, § 2(b) (Vernon Supp. 2008)); Act of May 20, 2005, 79th Leg., R.S., ch. 660,
§ 2, 2005 Tex. Gen. Laws 1641 (codified at Tex. Code Crim. Proc. Ann. art. 37.07, § 3(c) (Vernon
2006)). Loun does not challenge the trial court's declaration of a mistrial on punishment only.
2. In 2007, the Texas Legislature amended Section 9.32 and removed the duty to retreat. See
Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, 1995 Tex. Gen. Laws 2141, 2141-42, amended
by Act of March 20, 2007, 80th Leg., R.S., ch. 1, § 3, 2007 Tex. Gen. Laws 1, 1-2. Because the
offense for which the jury convicted Loun occurred prior to this amendment, our analysis of Loun's
appeal is governed by the prior version of Section 9.32. See Act of March 20, 2007, 80th Leg., R.S.,
ch. 1, § 3, 2007 Tex. Gen. Laws 1, 1-2 (an offense committed before Act's effective date governed
by sections in effect when offense committed).
3. In 1995, the Legislature amended subsection (b) of Section 9.31 without amending
subsection (a). See Act of May 12, 1995, 74th Leg., R.S., ch. 190, § 1, 1995 Tex. Gen. Laws 1919,
1919 (amended 2007) (current version at Tex. Penal Code Ann. § 9.31).
4. Fancher was separated from her husband. Fancher's husband, who was in the Navy, was in
Connecticut at the time. 
5. Among other things, LaPelley had accused Fancher, who had a handicapped child, of being
a bad mother. 
6. The autopsy revealed that LaPelley's blood alcohol level was 0.19. Clark testified LaPelley
was obviously drunk. Fancher testified she was under the impression LaPelley had been drinking. 
Clark testified LaPelley had a beer can in his hand when he entered the apartment. 
7. Clark testified that Fancher had told Loun about LaPelley's prior violence toward Fancher. 
Krista Zarate testified LaPelley had physically abused Fancher on prior occasions. Zarate had
personally seen the bruises. Clark had also seen bruises. Loun had never met LaPelley prior to the
night of the shooting. Loun informed Lieutenant Craig Sweeney, a detective with the Henderson
Police Department, at the scene that he had "heard something about" LaPelley mistreating Fancher. 
8. The charge submitted to the jury instructed that the duty to retreat requirement "does not
apply to an actor who uses force against a person who is at the time of the use of force committing
an offense of unlawful entry in the habitation of the actor." 
9. Lieutenant Sweeney testified he did not observe any damage to the apartment door "that you
might normally think would be there" if there had been a forced entry. On cross-examination,
Sweeney admitted none of the witnesses had claimed LaPelley had "kicked the door down, that he
tore the door up, or anything else . . . ." Sweeney testified that the witnesses had told him LaPelley
used force to push the door open. While LaPelley may not have had to use extreme force to enter
the apartment, all of the witnesses testified he used some force.
10. The impact caused bruises on Clark's back. Photographs of the bruises were introduced into
evidence. 
11. On cross-examination, Roberson admitted he did not know anything about LaPelley's prior
violent behavior. 
12. Callaway admitted on cross-examination that an intoxicated person may not think
rationally, which could make him more of a danger. 
13. Loun testified he looked around at everyone to make sure no one else was hurt. Loun
testified he was "kind of in a daze." 
14. Loun testified he put the magazine underneath the bedcovers because he did not know how
badly LaPelley had been injured and did not want LaPelley to be able to use the gun if he got back
up. 
15. Roberson testified earlier in the evening he and Loun had been talking about guns. 
Roberson could not recall how the subject had come up, but Loun had pulled out the gun to show
Roberson. Roberson testified he had asked a "bunch of different questions." Roberson and Loun
testified that after they finished discussing the gun, Loun placed the gun on the coffee table. Clark
testified she believed the gun was on the coffee table when LaPelley entered the room. 
16. Zarate testified Loun pointed the gun at LaPelley while LaPelley was heading toward
Fancher and Loun told LaPelley to stop. Zarate testified that was the only occasion she remembers
LaPelley being warned. 
17. Loun testified at trial he could not tell whether LaPelley had any sort of a weapon in his
hand. Lieutenant Sweeney testified that Loun informed him on the night of the shooting that
LaPelley had a beer can in his hand. 
18. Loun had a concealed handgun license in Washington. Loun had taken a Texas concealed
handgun course, but had not obtained a Texas concealed handgun license. 
19. We note this article has been amended since the trial. Because the amendments are not
relevant to this case, we have cited the current version of the article. 
20. We note appellate courts formerly presumed, in nonjury trials, that the trial court ignored
inadmissible evidence. See, e.g., Tolbert v. State, 743 S.W.2d 631, 633 (Tex. Crim. App. 1988). 
The Texas Court of Criminal Appeals overruled that line of cases in Gipson v. State, 844 S.W.2d 738
(Tex. Crim. App. 1992) (concluding harmless error analysis should be conducted instead); cf. Ovalle
v. State, 13 S.W.3d 774, 784 n.34 (Tex. Crim. App. 2000). 
21. The State argues in its brief that Loun is asking this Court "to reward him by reversing the
decision of the jury as to punishment because one of the jurors was not allowed to violate the
instructions contained in the court's charge." We note the jury was instructed not to consider how
parole law would apply to Loun. We further note we generally presume the jury follows the trial
court's instructions. Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). We
acknowledge the law concerning parole law instructions is rife with contradictions. A court is
required to inform the jury about good conduct time and the possibility of parole and inform the jury
it can consider the existence of these doctrines, but then instruct the jury not to consider how such
doctrines will be applied to this particular defendant. If the jury follows the instruction to not
consider how parole will be applied to this particular defendant, an erroneous jury instruction will
not impact its deliberations. On the other hand, one could argue courts should not ignore the reality
that jurors will have some knowledge of the existence of parole and may be tempted to consider the
application of parole law despite being instructed not to. The Texas Legislature has determined
courts should provide the jurors with a more accurate, even if somewhat misleading, summary of the
law. It is not our role to question the wisdom of the policy decided by the Texas Legislature. Our
role is to guarantee the Legislature's policy decisions are carried out.
22. We note, since the objection was made outside the presence of the jury, a running objection
was not necessary to preserve error. See Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App.
2003); Ethington v. State, 819 S.W.2d 854, 859 (Tex. Crim. App. 1991). But it never hurts to secure
a running objection. 
23. Loun argues the record establishes the State knew Roberson's location, directing us to the
State's list of possible witnesses. This list contains a Rhode Island address for Roberson. 
24. We note Loun states in his brief: "The right of a defendant to confront his accuser is closely
guarded. See generally, Dedesma v. State, 806 S.W.2d 928, 930 (Tex. App.--Corpus Christi 1991,
pet. ref'd). Both the evidentiary hearsay rules and the Sixth Amendment to the U.S. Constitution are
designed to protect this much-valued safegaurd in our legal system." The error raised--a violation
of Rule 804(b)--is not constitutional. A violation, if any, of the Sixth Amendment has not been
raised as a separate issue. Further, the single case cited by Loun discussing the Confrontation Clause
did not concern prior recorded testimony. See Dedesma, 806 S.W.2d at 930. We may overrule any
multifarious or inadequately briefed point of error. Tex. R. App. P. 38.1.
25. During the second trial, Fancher, LaPelley's girlfriend, also testified that she did not believe
LaPelley posed a threat to anyone.