**Javier Edwuardo VILLARREAL, Appellant,**

v.

**The State of TEXAS, Appellee.**

**No. 06–05–00212–CR.**

Court of Appeals of Texas, Texarkana.

Submitted April 24, 2006.

Decided Oct. 17, 2006.

Discretionary Review Dismissed Dec. 13, 2006.

Rick Hagen, Denton, for appellant.

Deborah Moore, Asst. County Atty., Gary D. Young, Lamar County Dist. Atty., Paris, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Javier Edwuardo Villarreal was convicted by a jury for aggravated assault on his girlfriend by using a rolling pin, alleged to be a deadly weapon. *See* TEX. PEN.CODE ANN. § 22.02(a)(2) (Vernon Supp.2006). The jury assessed the maximum punishment of twenty years' imprisonment. Villarreal does not challenge the sufficiency of the evidence, nor does he challenge any aspect of the guilt/innocence phase of his trial. Instead, he complains only of two issues relating to punishment. We, therefore, discuss only the relevant factual and procedural background; apply the pertinent law; and, agreeing that harmful, reversible error occurred, remand the cause

to the trial court for a new trial on punishment. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29 (Vernon Supp.2006).

## I. BACKGROUND

After the jury returned its guilty verdict and heard the evidence presented at the punishment phase, the trial court submitted to the jury a charge on punishment that omitted the mandatory parole instruction. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4 (Vernon 2006). After beginning its deliberations, the jury sent a note to the trial court that read as follows:

> Is it possible to find out how many years he would actually serve compared to how many we sentence?
>
> 20 yrs =
>
> 15 yrs =

The trial court responded to the jury's note as follows:

> No. Such information is completely beyond our control. It is controlled entirely by the Board of Pardons and Paroles.

 The record does not show that the trial court followed the required procedure of reading the jury's note in open court and allowing Villarreal or his attorney the opportunity to object to the response. *See* TEX CODE CRIM. PROC. ANN. art. 36.27 (Vernon 2006).[1] While Villarreal does not specifically complain of the trial

---

1. Article 36.27 of the Texas Code of Criminal Procedure provides the following instruction with regard to notes from the jury:

 When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel for objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper. The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.

 TEX.CODE CRIM. PROC. ANN. art. 36.27.

court's failure to comply with Article 36.27,[2] he does urge two related points of error. First, he contends the trial court erred by completely omitting the mandatory parole instruction from its charge to the jury. Second, he complains that the trial court's response did not comply with Section 4 of Article 37.07 and, thus, caused egregious harm.

## II. APPLICABLE LAW

▇▇▇ When the trial court responds substantively to a jury question during deliberations, that communication essentially amounts to an additional or supplemental jury instruction. *See Daniell v. State,* 848 S.W.2d 145, 147 (Tex.Crim.App. 1993). When a defendant does not object to an error in the jury charge, such defendant is entitled to reversal of the jury's verdict only if the reviewing court determines that the error caused the defendant such egregious harm that he or she was deprived of a fair and impartial trial. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g); *Underwood v. State,* 927 S.W.2d 661, 663 (Tex.App.-Texarkana 1996, no pet.); *Roberts v. State,* 849 S.W.2d 407, 409 (Tex. App.-Fort Worth 1993, pet. ref'd). We determine this by considering the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole. *See Almanza,* 686 S.W.2d at 171; *Underwood,* 927 S.W.2d at 663. Direct evidence of harm is not necessary in order to establish egregious harm. *See Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996);

*Hill v. State,* 30 S.W.3d 505, 507–08 (Tex. App.-Texarkana 2000, no pet.).

Article 37.07 provides the following mandatory parole instruction:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he

---

**2.** If the trial court gives additional instructions without following Article 36.27, the trial court commits reversible error. *See Smith v. State,* 513 S.W.2d 823, 829 (Tex.Crim.App. 1974); *Martin v. State,* 654 S.W.2d 855, 857 (Tex.App.-Dallas 1983, no pet.). It is incumbent on a defendant, however, to bring the easily correctable error to the court's attention by objection or formal bill of exception.

Otherwise, we presume the trial court acted consistent with the statute, and no reversible error is shown. *See Green v. State,* 912 S.W.2d 189, 192 (Tex.Crim.App.1995); *Smith,* 513 S.W.2d at 829; *Hudson v. State,* 128 S.W.3d 367, 377 (Tex.App.-Texarkana 2004, no pet.); *Talley v. State,* 909 S.W.2d 233, 235 (Tex.App.-Texarkana 1995, pet. ref'd).

is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(a).

## III. ANALYSIS

### A. Omission of Parole Instruction Did Not Cause Egregious Harm

■ We addressed this same issue in *Vanschoyck v. State*, 189 S.W.3d 333 (Tex. App.-Texarkana 2006, pet. filed). Vanschoyck contended the trial court erred "by failing to include in the jury charge a parole law instruction" and relied on our opinion in *Rogers v. State*, 38 S.W.3d 725 (Tex.App.-Texarkana 2001, pet. ref'd), to support his position. *Vanschoyck*, 189 S.W.3d at 336. We distinguished *Rogers* on the basis that the trial court in *Rogers* submitted an incorrect parole instruction in response to a jury note. *Id.* at 337. In contrast, the issue in *Vanschoyck* was the omission of any parole law instruction, rather than the submission of an inaccurate one. *Id.* at 338. We reviewed the relevant evidence, the punishment assessed, and the absence of any objection. *Id.* We also discussed the probable effect of the parole law instruction on juries: "Most courts have agreed that the parole law instruction chiefly favors the State, and an attorney could reasonably decide not to object to its omission." *Id.* (citations and footnotes omitted). Ultimately, we concluded the omission of the parole

instruction did not constitute egregious harm.

Similarly, here, we note the severity of Villarreal's assault on his girlfriend as a consideration supporting the jury's assessment of the maximum sentence. We reiterate our position on the effect of the parole law instruction and conclude that, on these facts, the omission of the parole instruction did not constitute egregious harm.

### B. Noncomplying Parole Instruction in Response to Jury Note Did Cause Egregious Harm

■ In light of the generally accepted effect of the parole instruction, and the absence of any objection by Villarreal, the initial omission of the parole instruction was not egregious error. However, when it became apparent the jury was concerned with application of the parole law, the trial court was required to give the mandatory parole instruction pursuant to Article 37.07. *See Ramos v. State*, 831 S.W.2d 10 (Tex.App.-El Paso 1992, pet. ref'd). The trial court's deviation from Article 37.07 under these circumstances caused egregious harm.

At issue in another case before this Court was an instruction similar to the one submitted in the instant case. In *Underwood*, the trial court submitted, without objection, the following instruction in its original charge to the jury:

You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours.

927 S.W.2d at 662. Underwood complained that the submission of this charge constituted egregious harm. This Court disagreed, pointing to the ample evidence to support the jury's assessment of a seventy-year sentence. *Id.* at 663. Further, neither party mentioned parole or good time conduct at any point during trial. *Id.* In light of these considerations, the submission of this noncomplying instruction was not egregious error. *Id.*

The El Paso court examined different circumstances in *Ramos* in which the original punishment charge did not include any instruction regarding parole. Later, the jury sent a note to the trial court specifically requesting information on the application of parole. 831 S.W.2d at 17. The trial court responded to the jury's note "by stating he could only refer them to the evidence and the court's charge." *Id.* Ramos objected and unsuccessfully argued that the jury should be instructed not to consider the effects of parole in its deliberations. *Id.*

The El Paso court noted that, by not objecting to the original punishment charge, Ramos may have waived the mandatory inclusion of the parole instruction. *Id.* at 18. However, the court emphasized that, when it became clear the jury was considering the application of parole during its deliberations, it became incumbent on the trial court to give the jury "a curative instruction that they did not cloud their deliberations with parole." *Id.* The *Ramos* court explained that the jury's note to the trial court "revived" the issue of parole instruction after the original punishment charge was submitted to the jury without reference to parole law and without objection to that omission. *Id.*

The court acknowledged that appellate courts generally presume the jury followed the instructions, but noted that this presumption is rebuttable. *See id.* (citing *Rose v. State*, 752 S.W.2d 529, 554 (Tex. Crim.App.1987)). Such was the case in *Griffin v. State*, 811 S.W.2d 221, 224 (Tex. App.-Houston [1st Dist.] 1991, no pet.), a case in which a parole instruction was given and, therefore, no presumption arose that the jury did not consider the effect of the parole laws. The *Ramos* court concluded the presumption that the jury followed the instruction was "rebutted due to the undeniable fact that the jury initially strayed from the law as given by the court in its charge" and found it "improbable that the subsequent generic censure from the court referring the jury to the evidence and the charge sufficiently limited [its] deliberations to the proper parameters." *Ramos*, 831 S.W.2d at 18.

The *Ramos* court concluded that, on those facts, it was reasonable to assume the jury did consider its own understanding of the application of the parole law in assessing punishment. *Id.* at 19. Even though there was no mention of parole in jury arguments, the court concluded that such absence did not "overcome the strong possibility" that the jury considered parole in its deliberations. *Id.* The court held that the record did not establish beyond a reasonable doubt that the trial court's refusal to instruct the jury not to consider parole did not contribute to the assessment of the forty-year sentence. *Id.* The *Ramos* court reversed the trial court's judgment as to punishment and remanded the cause to the trial court for a new trial on punishment. *Id.*

While the *Ramos* court addressed the charge error to which the defendant had objected, we were later faced with a very similar situation in which the defendant did not object to the trial court's response to a jury note. *See Rogers*, 38 S.W.3d 725. In *Rogers*, we had to determine whether the trial court's inaccurate parole instruc-

tion in response to a jury's note constituted egregious harm.

In *Rogers*, the original charge on punishment also did not include a parole law instruction. As in *Ramos*, the jury in *Rogers* later sent a note to the trial court that asked the trial court how many years a life sentence was and asked the trial court to define "life." *Id.* at 728. The trial court responded with a rather detailed explanation:

IF YOU ASSESS A LIFE SENTENCE, THE DEFENDANT MUST SERVE A MINIMUM OF 30 CALENDAR YEARS BEFORE THE DEFENDANT WOULD BE ELIGIBLE FOR PAROLE. THE BOARD OF PARDONS AND PAROLES WOULD THEN DETERMINE IF THE DEFENDANT IS GRANTED PAROLE.

*Id.* The trial court's response failed to comply with the mandatory instruction required by Section 4 of Article 37.07. Further, the record failed to show that the trial court read its response to the jury in open court, nor did it show that the trial court submitted the response to counsel to allow for objection.[3] *See id.* at 729; *see also* TEX.CODE CRIM. PROC. ANN. art. 36.27. Careful to note that the procedural failures of the trial court were not specifically appealed, this Court noted that Rogers complained that the trial court's response constituted "an improper charge advising the jury of the mathematical effect of parole law." *Rogers*, 38 S.W.3d at 729.

We examined the record to determine whether the noncomplying instruction constituted egregious error. We considered the trial court's failure to comply with the procedural requirements of Article 36.27,

as well as the obvious failure of the trial court's response to provide the information required by Article 37.07. *See id.* We pointed to the fact that the State referred to parole during its closing argument to the jury. *Id.* at 730. We considered the jury's express interest in parole considerations, as shown by its note to the trial court. Finally, we considered the fact that the jury assessed a life sentence. In light of those considerations, we concluded the trial court's noncomplying response to the jury's note constituted egregious harm. *Id.* We reversed the trial court's judgment as to punishment and remanded the matter for a new trial on punishment. *Id.;* *see also Hill*, 30 S.W.3d at 508–09 (concluding that an express misstatement of parole law to jury that misled jury about parole system constituted egregious harm).

In the instant case, we find elements consistent with *Underwood, Ramos*, and *Rogers*. Of course, the trial court's response here is most similar to the response the trial court submitted in its original charge to the jury in *Underwood.* However, while the *Underwood* response did go so far as to direct the jury not to consider or discuss parole in its deliberations, the trial court's response here could be read to stop short of such direction. Again, the trial court responded as follows:

No. Such information is completely beyond our control. It is controlled entirely by the Board of Pardons and Paroles.

The trial court's response does explain that the Texas Board of Pardons and Paroles maintains control over parole, and such explanation could be read to infer that the matter is of no concern to the jury. However, a more literal reading of

---

3. Article 36.27 also requires that "[a]ll such proceedings in felony cases shall be a part of the record and recorded by the court reporter." TEX.CODE CRIM. PROC. ANN. art. 36.27. Again, we do not address the failure to comply with Article 36.27 as a point of error in and of itself. Rather, in our review of the entire record for egregious harm, the absence of such recordings is a consideration. *See Rogers*, 38 S.W.3d at 729.

the response yields the conclusion that the jury was never actually instructed not to consider parole while assessing punishment. So, in that way, the instruction in the instant case is perhaps less informative and less curative than that given in *Underwood*. A glaring distinction between the instant case and *Underwood*, in which the flawed instruction was submitted without objection in the trial court's original charge on punishment, is the presence of the jury note in the instant case which demonstrated the jury's interest in and consideration of parole during its deliberations.

The presence of the jury note in this case makes it similar to *Ramos* and *Rogers*. In all three cases, the trial court was called on to give the Article 37.07 parole instruction in response to the jury's question raising issues about parole. Whether its failure to do so constitutes egregious harm here depends on our examination of the record.

We note that, unlike the State's argument in *Rogers*, the State in this case did not specifically mention parole in its jury argument. However, as in *Rogers*, the jury in this case assessed the maximum sentence. And, as in *Ramos*, it seems reasonable to conclude that, in the absence of a proper instruction in response to its note, the jury here did continue to consider parole during its assessment of punishment.

The severity of the assault against Villarreal's girlfriend does lend some support to the conclusion that the erroneous instruction did not cause egregious harm. However, we do not think this consideration alone overcomes the other considerations weighing in favor of the conclusion that the submission of the noncomplying parole instruction did constitute egregious harm.

Because the jury obviously had been considering the impact of the parole law on Villarreal's punishment, because the record fails to demonstrate that the trial court followed the proper procedural steps in responding to this note and then failed to submit the mandatory parole law instruction in accordance with Article 37.07, and because the jury assessed the maximum punishment, we conclude the trial court's submission of the noncomplying instruction constitutes egregious harm.

## IV. CONCLUSION

For the above-stated reasons, we reverse the trial court's judgment as to punishment and remand the cause to the trial court for a new trial only on that issue. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b).