In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00021-CR


______________________________




JUAN JASSO, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33283-B




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 While fleeing the White Oak, Texas, police, Juan Jasso fired multiple shots at his pursuers
from a handgun. After being apprehended, Jasso pled guilty to the offense of aggravated assault on
a public servant, and the issue of his punishment was submitted to a jury. In the process, Jasso
signed a stipulation of evidence, which was admitted into evidence without objection, wherein Jasso
admitted he used or exhibited a deadly weapon (a firearm) during the commission of that crime. The
jury assessed punishment at eighty years' imprisonment. Jasso now appeals, raising three points of
error. We overrule each issue and affirm the trial court's judgment.

 In his first issue, Jasso contends the trial court committed error by instructing the jury
regarding parole using language that failed to track the statutory instruction. "The function of the jury
charge is to instruct the jury on applying the law to the facts." Abdnor v. State, 871 S.W.2d 726, 731
(Tex. Crim. App. 1994). "[A]n erroneous or an incomplete jury charge jeopardizes a defendant's
right to jury trial because it fails to properly guide the jury in its fact-finding function." Id. "An
erroneous or incomplete jury charge, however, does not result in automatic reversal of a conviction." 
Id. Instead, Article 36.19 of the Texas Code of Criminal Procedure outlines the path this Court
should follow to review error in the charge: "[F]irst, the court must determine whether error actually
exists in the charge, and second, the court must determine whether sufficient harm resulted from the
error to require reversal." Abdnor, 871 S.W.2d at 731-32 (discussing Tex. Code Crim. Proc. Ann.
art. 36.19 (Vernon 1981), and referencing Gibson v. State, 726 S.W.2d 129, 132 (Tex. Crim. App.
1987); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). The
subsequent evaluation of whether "sufficient harm" shall be found to require reversal "depends upon
whether appellant objected." Abdnor, 871 S.W.2d at 732. "Where there has been a timely objection
made at trial, an appellate court will search only for 'some harm.'" Id. "By contrast, where the error
is urged for the first time on appeal, a reviewing court will search for 'egregious harm.'" Id. (citing
Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); Almanza, 686 S.W.2d at 171). 
"Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant
of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment
clearly and significantly more persuasive." Blumenstetter v. State, 135 S.W.3d 234, 240 (Tex.
App.--Texarkana 2004, no pet.). The degree of harm demonstrated by the appellant must be actual,
not merely theoretical. Almanza, 686 S.W.2d at 174; Taylor v. State, 146 S.W.3d 801, 804 (Tex.
App.--Texarkana 2004, pet. ref'd).

 For cases involving what are called "3g offenses," (1) a list which includes crimes during the
commission of which a firearm is used or exhibited, a trial court is required to issue the following
instructions to the jury during the punishment phase of the trial:

 Under the law applicable in this case, the defendant, if sentenced to a term of
imprisonment, may earn time off the period of incarceration imposed through the
award of good conduct time. Prison authorities may award good conduct time to a
prisoner who exhibits good behavior, diligence in carrying out prison work
assignments, and attempts at rehabilitation. If a prisoner engages in misconduct,
prison authorities may also take away all or part of any good conduct time earned by
the prisoner.


 It is also possible that the length of time for which the defendant will be
imprisoned might be reduced by the award of parole.


 Under the law applicable in this case, if the defendant is sentenced to a term
of imprisonment, he will not become eligible for parole until the actual time served
equals one-half of the sentence imposed or 30 years, whichever is less, without
consideration of any good conduct time he may earn. If the defendant is sentenced to
a term of less than four years, he must serve at least two years before he is eligible for
parole. Eligibility for parole does not guarantee that parole will be granted.


 It cannot accurately be predicted how the parole law and good conduct time
might be applied to the defendant if he is sentenced to a term of imprisonment,
because the application of these laws will depend on decisions made by prison and
parole authorities.


 You may consider the existence of the parole law and good conduct time. 
However, you are not to consider the extent to which good conduct time may be
awarded to or forfeited by this particular defendant. You are not to consider the
manner in which the parole law may be applied to this particular defendant.


Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon 2006) (emphasis added). In this case, of
the five above-quoted paragraphs from the statute, the trial court's instruction relocated the third
paragraph into the fifth position and omitted from that paragraph the language which is italicized
above. Because the charge given does not match the required charge exactly, the jury charge
contains error. On appeal, Jasso complains only regarding the omission of the phrase "or 30 years,
whichever is less."

 Jasso did not object to this oversight when given the opportunity by the trial court. He is,
therefore, required to show egregious harm under Almanza. Jasso's brief on appeal does not point
us to any location in the record demonstrating actual harm, as is required by Almanza. Instead, Jasso
argues that he suffered egregious harm because the State argued vigorously for a life sentence and
because the jury sent out notes to the trial court asking whether Jasso would become eligible for
parole if given a life sentence. 

 After reviewing the record, we conclude that neither the State's argument nor the jury's
questions affirmatively demonstrate Jasso suffered egregious harm as a result of the incomplete
parole instruction. At best, Jasso's argument concerns theoretical harm; but Almanza clearly states
the harm must be actual and must be evidenced in the record--a conjectural or theoretical impact
is insufficient. The trial court also specifically instructed the jury, both orally and in writing, that
the jury should not consider how parole might affect the actual term of Jasso's confinement, if any. 
Jasso has directed our attention to nothing in the record that affirmatively shows this error vitally
affected his defensive theory or made the case for punishment more significant. In light of the entire
record, we conclude that the omission of the thirty-year alternative language concerning when Jasso
might be eligible for parole did not vitally affect any defensive theory nor make the case for
punishment more significant. Therefore, any harm Jasso suffered from this omission was not
egregious. (2) We overrule Jasso's first point of error. (3)

 In his second point of error, Jasso contends the trial court erroneously instructed the jury
regarding the affirmative findings that Jasso used or exhibited a deadly weapon during the
commission of his crime. The trial court's jury charge contained the instruction that Jasso would not
become eligible for parole until he had served half his sentence. This is the proper instruction to be
given in 3g (deadly weapon) cases when accompanied by the additional "or 30 years, whichever is
less" language (which was omitted in this case). Jasso contends, however, that this instruction was
erroneous because the jury had not yet made an affirmative finding that he used or exhibited a deadly
weapon. 

 It is true that the jury had not yet been asked to make an affirmative finding regarding the
deadly weapon allegation by the time the trial court gave the (incomplete) 3g parole instruction. See
Tex. Code Crim. Proc. Ann. art. 37.07, § 4. Instead, the trial court submitted both the deadly
weapon issue and the verdict form regarding punishment within the same set of instructions. Jasso
also correctly notes that the trial court's jury charge did not include an alternative parole instruction
for non-3g offenses, which might have been appropriate had the jury been entitled to find against the
State's claim that Jasso used or exhibited a deadly weapon in this case. See Tex. Code Crim. Proc.
Ann. art. 37.07, § 4(b). Jasso asserts that the lack of these alternative, non-3g parole instructions
necessarily caused egregious harm because it failed to inform the jury about the consequences of the
deadly weapon finding. 

 Jasso's argument assumes that the lack of an alternative instruction was erroneous. We
conclude it was not, and reach this decision because Jasso had already affirmatively admitted
(several times) that he used a firearm during his crime. The indictment against Jasso included a
deadly weapon allegation. The State read the indictment in the jury's presence, including the deadly
weapon allegation, and Jasso affirmatively admitted the entirety of the indictment's allegations. The
record reflects that the trial court then accepted Jasso's guilty plea. The trial court also admitted into
evidence, without objection from Jasso, the latter's written confession, a document in which Jasso
admitted he used or exhibited a deadly weapon during his crime. 

 In McIntosh v. State, the appellant argued that the trial court erred by not submitting a special
issue to the jury during punishment on whether he used or exhibited a deadly weapon during the
commission of his crime. 855 S.W.2d 753, 770-71 (Tex. App.--Dallas 1993, pet. ref'd). The Fifth
Court of Appeals disagreed. Our sister court held that, once the jury found McIntosh guilty of
murder "as charged in the indictment," it was unnecessary for the trial court to submit the deadly
weapon issue to the jury. Id. at 771. The court further stated, "Any harm failing to condition the
special issue . . . was not so egregious as to deny McIntosh a fair trial." Id. (referencing Luken v.
State, 780 S.W.2d 264, 268-69 (Tex. Crim. App. 1989)). 

 The reasoning in McIntosh applies with equal force here: Once Jasso entered his guilty plea
to the totality of the indictment, the submission of a deadly weapon instruction became superfluous. 
Jasso's plea to both the criminal offense and the indictment's deadly weapon allegation had been
accepted by the trial court. As no deadly weapon instruction and separate finding was even required
to be submitted to the jury, it follows that an alternative parole instruction under Section 4(b) of
Article 37.07 was not required. Cf. id. No error has been shown. We overrule Jasso's second point
of error.

 In his third point of error, Jasso contends the trial court erred "in asking the jury to find
whether or not the Appellant used or exhibited a deadly weapon without requiring the State to prove
this fact beyond a reasonable doubt." The jury found Jasso guilty as charged in the indictment based
on his plea of guilty to the entirety of the indictment's allegations. The indictment included language
regarding Jasso's use of a deadly weapon, specifically a firearm, during the commission of his crime. 
Jasso's written stipulation, admitted into evidence without objection, also includes a confession that
Jasso used or exhibited a deadly weapon during his crime. 

 As stated above, once Jasso pled guilty to the entirety of the indictment's allegations, the trial
court's act of requiring the jury to make an affirmative deadly weapon finding became superfluous. 
That empowered the trial court to enter such a finding on its own without submitting the issue to the
jury, just as the court was empowered to make a formal finding of guilt based on Jasso's guilty plea. 
Cf. McIntosh, 855 S.W.2d at 771; and see Hill v. State, 913 S.W.2d 581, 586 (Tex. Crim. App. 1996)
(deadly weapon issue should be submitted during guilt/innocence); Blackwell v. State, 818 S.W.2d
134, 140 (Tex. App.--Waco 1991, pet. ref'd) (fact-finder effectively made deadly weapon finding
when it found appellant guilty as charged in indictment). No reversible error has been shown.

 Alternatively, Jasso failed to object to this alleged error in the trial court's charge. Absent
an objection at trial, Jasso must demonstrate he suffered egregious harm on appeal. Almanza, 686
S.W.2d at 171. Jasso's brief on appeal makes no effort to demonstrate the asserted error had an
actual, rather than merely theoretical, effect on his substantial rights. Accordingly, Jasso has
inadequately briefed this issue and it is thereby waived.

 For the reasons stated, we overrule Jasso's three points of error and affirm the trial court's
judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: November 15, 2006

Date Decided: November 16, 2006


Do Not Publish
1. See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2006).
2. Accord Vanschoyck v. State, 189 S.W.3d 333, 336-39 (Tex. App.--Texarkana 2006, pet.
ref'd) (absence of parole instruction did not cause egregious harm; Legislature's purpose in requiring
parole instruction was to increase sentences, not lessen them in defendant's favor); Newman v. State,
49 S.W.3d 577, 580-82 (Tex. App.--Beaumont 2001, pet. ref'd) (erroneous parole instruction did
not cause egregious harm); Shavers v. State, 985 S.W.2d 284, 290-92 (Tex. App.--Beaumont 1999,
pet. ref'd) (based on entire jury charge, certain mitigating instructions, state of evidence, and
argument of counsel, erroneous parole instruction did not cause egregious harm); Ray v. State, 764
S.W.2d 406, 413-14 (Tex. App.--Houston [14th Dist.] 1988, pet. ref'd) (jury received curative
instruction not to consider how parole might be applied to length of actual sentence served;
egregious harm not shown); Herring v. State, 738 S.W.2d 18, 20 (Tex. App.--Austin 1987, pet.
ref'd, untimely filed) (erroneous parole instruction was favorable to defendant in leading jury to
believe he would not become eligible for parole until after he had served larger portion of sentence
than in fact was case).
3. Recently, we decided a case in which both the jury charge and a response to a jury note were
erroneous as to parole. See Villarreal v. State, No. 06-05-00212-CR, 2006 Tex. App. LEXIS 8945
(Tex. App.--Texarkana Oct. 17, 2006, no pet. h.). We held in Villarreal that the complete omission
of parole instructions in the jury charge was not egregiously harmful, but that the incorrect response
to the jury note, given without following the prescribed procedure for responding to jury notes, see
Tex. Code Crim. Proc. Ann. art. 36.27 (Vernon 2006), and in light of a life sentence assessed after
a forceful jury argument for such a sentence, constituted egregious harm. Villarreal is
distinguishable from the case before us in that: (A) here, the only complained-of omission is the
language concerning the thirty-year maximum sentence to be served before parole eligibility, while,
in Villarreal, the challenge on appeal was both to the complete failure to give a parole instruction
and to the incorrect answer to the jury note; and (B) here, the jury was also instructed not to consider
how parole law may be applied to Jasso, while, in Villarreal, there was no such instruction. See
Villarreal, 2006 Tex. App. LEXIS 8945, at *15-18.