

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-19-00100-CR

---

ALLEN LAMONT SUTTON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR17-073

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Allen Lamont Sutton had had a longstanding romantic relationship with Laneshia Young. But Young served some jail time, during which time Sutton lived with and impregnated Young's cousin, Sheyria Grant. After Young's release, her relationship with Sutton resumed. Grant later disappeared and has not been found. Only traces of her blood were found inside the trunk of Sutton and Young's automobile, which was missing its trunk liner, but which bore other notable evidence inside its trunk. Sutton was charged with and convicted of tampering with evidence,[1] that is, the trunk liner, either directly or as a party with Young.

On appeal, Sutton argues that insufficient evidence supports his connection with the missing trunk liner and that the jury instructions on party liability impermissibly commented on the weight of the evidence by using Young's name numerous times. We affirm the judgment of the trial court because (1) sufficient evidence supports the jury's finding that Sutton, directly or as a party with Young, removed or concealed the trunk liner and (2) there was no jury-instruction error as asserted by Sutton on appeal.

*(1)*      *Sufficient Evidence Supports the Jury's Finding that Sutton, Directly or as a Party with Young, Removed or Concealed the Trunk Liner*

Sutton argues that the evidence is insufficient to sustain the jury's finding of guilt for tampering with physical evidence with intent to impair the evidence's availability for use in an investigation. Specifically, he claims there is no evidence he did anything with the trunk liner either directly or as a party with Young. We disagree.

---

[1]*See* TEX. PENAL CODE ANN. § 37.09(a)(1). Specifically, Sutton was indicted for and convicted of concealing a thing, to wit, a trunk liner, with intent to impair its availability as evidence in an investigation. He was sentenced to ten years' confinement.

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. We defer to the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13 (citing *Jackson*, 443 U.S. at 318–19).

Because Sutton's focus in this regard is the question of his connection, if any, to the trunk liner's being missing, that is ours as well.

We begin with Sutton's relationship to the now missing Grant. For a few months in late 2015 and possibly into 2016, during Young's incarceration, Sutton and Grant lived together with another couple, Ashley Odom and her boyfriend. Odom testified that she and Grant became fast friends. In late 2015, Grant discovered that she was pregnant with Sutton's child. Odom testified that Grant was very excited about the pregnancy and was in love with Sutton. By contrast, Sutton, according to Odom, was apathetic about the pregnancy. Odom described one occasion after the discovery of Grant's pregnancy on which Grant was speaking with a friend by telephone and was heard to tell the friend she loved Sutton. In response, Sutton seized the phone, choked Grant, and told her he would kill her. Also, three months before Grant's disappearance, Young had assaulted Grant in Sutton's presence.[2] Then, within a month before Grant disappeared, Odom heard Sutton say Grant "was causing him problems and needed to go." Odom heard Sutton say this "[a] couple of times," and, to her, he seemed to be serious about his comment.[3] Odom told Grant about Sutton's statements and warned her to stay away from him. Grant, though, did not take her friend's warnings seriously.

Sutton and Young jointly owned a Crown Victoria automobile, but it got repossessed just days after Grant disappeared. On inspection by the creditor, the repossessed car was missing its trunk liner, spare tire, and jack. A representative of the creditor testified that it was the first time he had seen a car recovered without a trunk liner. Traces of Grant's blood were found on the

---

[2]Young and Grant were first cousins; Young assaulted Grant because Grant was pregnant with Sutton's child.

[3]The State asked Odom, "[F]rom what you observed, did it appear that he meant that she just needed to get in a car and go somewhere or something more serious?" She replied, "More serious."

4

underside of the trunk's lid.[4]  There was also blood on the wiring from the trunk into the trunk's lid, though it does not appear that blood was tested.  Law enforcement testified that the wiring looked as though someone had tried to pull it out from inside the trunk, as if that person were trying to escape the trunk.

Detective Stephen Gooden thought the missing trunk liner was significant; he opined that because most trunk liners are made of some kind of carpet, the liner would have absorbed blood or other matter possibly containing evidence helpful to the investigation.  In the trunk, though, was a gas can bearing Sutton's fingerprint.  Also found in the car were several documents, such as copies of Sutton's and Young's driver's licenses and social security cards; an old driver's license of Sutton's; and birth certificates, confirming to law enforcement officers that the vehicle was owned or used by Sutton and Young.

Sutton voluntarily attended an interview by law enforcement on August 25, the day after the car was repossessed.  To that point, investigators had not divulged that blood had been found in the trunk.  Questioning Sutton, officers asked why there would be blood in his car.  Sutton answered that he did not go in the trunk.  That raised officers' suspicions of Sutton, because they had told Sutton only that blood had been found in the car, not that it had been found specifically in the trunk.  At the interview, officers also asked Sutton about observed scratches on Sutton's hands and legs, which Sutton attributed to his running from officers when they sought to arrest him.

---

[4]Because Grant has never been found, DNA samples were acquired from her parents and from cuttings of the bristles of Grant's toothbrush.  Comparing the DNA from those samples, it was determined that the blood on the inside of the trunk lid could be identified as Grant's to a one in 1.64 quadrillion chance.

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). "[P]roof of circumstantial evidence is not subject to a more rigorous standard than is proof by direct testimonial evidence." *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989).

Evidence was presented from which the jury could find that Sutton removed and concealed the trunk liner, or cooperated with Young in such actions, to keep it out of any investigation into Grant's disappearance. The car had been purchased by Sutton and his girlfriend, Young; there was "bad blood" between Grant and Young dating back months, likely due to Sutton's having impregnated Grant while Young was in prison. [5] When the car was found, it had Grant's blood on the underside of the trunk lid; there was blood on the wiring in the trunk which had been at least partially pulled out. These circumstances would allow a rational jury to believe that an injured Grant was in the trunk trying to escape. Specific personal documents of Sutton and Young were in the liner-less trunk, as well as a gas can with Sutton's fingerprint.

Evidence showed that Sutton was troubled by Grant and her affection for him, as evidenced by his attacking her while she spoke of her love for Sutton on the telephone to a third party and his ominous statements three weeks before Grant's disappearance that Grant "was causing him problems and needed to go."

---

[5]Based on Sutton's comments to investigators, Sutton considered Young his girlfriend while she was in prison, even while Sutton was living with and impregnated Grant.

Considering all the evidence in a light most favorable to the verdict, we find sufficient evidence from which a rational jury could have found Sutton concealed the trunk liner with an intent to preclude the liner's use as evidence into the investigation of Grant's whereabouts. This point of error is overruled.

*(2)     There Was No Jury-Instruction Error as Asserted by Sutton on Appeal*

On appeal, Sutton also claims error in the charge to the jury, regarding the law of parties, in its use of Young's name numerous times. *See* TEX. PENAL CODE ANN. § 7.01. Sutton argues that the repetition of Young's name in the charge amounts to the trial court's improperly commenting on the evidence. As a result, according to Sutton, the charge "directs undue attention" to Young's possible involvement in Grant's disappearance and is improper.

The State asserts that Sutton did not properly preserve this issue. We agree, but we still must review his claim on appeal. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

We employ a two-step process in our review of alleged jury charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13. "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917

7

(Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

The level of harm necessary to require reversal due to jury-charge error depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. Here, because Sutton did not lodge a trial objection commensurate with his claim on appeal,[6] we will not reverse unless the record shows an asserted error that resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), such that he did not receive a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.).

We do not find the alleged error as asserted here. "Each party to an offense may be charged with commission of the offense." TEX. PENAL CODE ANN. § 7.01(b). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a). "A person is criminally responsible for an offense committed by the conduct of another if" "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN.

---

[6]At trial, Sutton objected that the jury charge included party liability at all, not that, as he argues on appeal, its repeated use of Young's name constituted an improper comment on the weight of the evidence.

8

§ 7.02(a)(2); *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013). To determine whether Young was a party to the offense of tampering with evidence, we may consider "events before, during, and after the commission of the offense." *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (quoting *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977). We may consider circumstantial evidence showing that Young and Sutton had an understanding and common design to commit the offense. *See Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g).

"When the evidence is sufficient to support both primary and party theories of liability, the trial court does not err in submitting an instruction on the law of parties." *Id*. Above, we summarized the evidence supporting Sutton's guilt as a primary offender in concealing evidence such that it could not be available for the investigation. Detective Stephen Goodson testified that Young was facing the same charges as Sutton. In his interview with law enforcement investigators, Sutton consistently said that he and Young were together and using their car the entire weekend immediately following Grant's disappearance. Young, too, had a history of "bad blood" with Grant, including assaulting her three months before Grant went missing. Personal identifying documents of Young as well as Sutton were found in the car, which was owned jointly by Young and Sutton. That car had Grant's blood in the trunk and Sutton's fingerprint on a gas can. All of this is evidence that could support a finding that Sutton was a party to the offense of tampering with evidence to impair its availability in an investigation.

Because an instruction, even one seemingly neutral on its face, may be an improper comment on the weight of the evidence if it draws improper focus on a particular piece of evidence

9

or to a particular factor, it is conceivable that the repeated use of Young's name could draw that focus. *See Kirsch*, 357 S.W.3d at 651. Here, however, there is no other possible party mentioned in this record; the charged actions could have been attributable only to Sutton and Young together, to Sutton alone, or to Young alone. The focus on Young's name was not undue and did not detract from any other possible focus. The charge's repeated use of Young's name was not error.[7]

We overrule this point of error.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     January 6, 2020
Date Decided:       February 5, 2020

Do Not Publish

---

[7]Even if it had been error, the error could not have been egregiously harmful. "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). When faced with making this determination, we review "the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole." *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171). Here, again, the record is clear that only Young and Sutton could have been parties in the alleged offense. There was no claim that Sutton was a party with anyone other than Young. A focus on Young as a possible party, as allegedly set up by the instruction, could not have gone to the very basis of the case or to any defensive theory of Sutton.

10