

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00050-CR

KARANYA MARQUISE DUDLEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 22M0547CCL

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Bowie County jury convicted Karanya Marquise Dudley of resisting arrest,[1] and it assessed a sentence of confinement for ninety days in the county jail. In this appeal, Dudley complains that there was reversible error in the jury charge because of (1) an erroneous application paragraph and (2) the trial court's refusal to include her requested lesser-included-offense instruction. Because we find that Dudley was not egregiously harmed by the erroneous application paragraph and that she was not entitled to a lesser-included-offense instruction, we will affirm the trial court's judgment.

I.     Background

At trial, testimony and Texarkana police officer Darren Jones's body-camera footage showed that Jones initiated a traffic stop after he observed that Dudley was not wearing a seatbelt. After Dudley pulled into the parking lot of an auto parts store, Jones further determined that Dudley did not have a driver's license or automobile insurance and that her vehicle registration had expired. When Jones stepped to the rear of the vehicle, Dudley exited the vehicle and began loudly complaining about not being able to get a driver's license and automobile insurance, and Jones tried to calm her down.

Eventually, Jones informed Dudley that he was issuing her tickets because she did not have a driver's license and automobile insurance, issuing her warning tickets for not wearing a seatbelt and an expired vehicle registration, and impounding her vehicle. When he asked her to sign his digital ticket writer, Dudley refused to sign it. After Jones informed her that, if she did

---

[1]See TEX. PENAL CODE ANN. § 38.03(a).

not sign, he had to take her to jail,[2] Dudley again refused to sign. Jones repeated his warning that, if she did not sign, he had to take her to jail. Dudley continued to refuse to sign. When Jones took hold of Dudley's arm to arrest her, she pulled both arms away, locked her elbows, and attempted to prevent Jones from placing her arms behind her back. After he got both of her arms behind her back, Dudley freed one arm, twisted her body, and reached toward the ground for her cellphone. At that point, Jones placed her on the ground, put both of her arms behind her back, and placed handcuffs on her.

## II. Standard of Review

"We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.)).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." *Id.* (alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.13). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Id.* (quoting *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd)). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or

---

[2]The recording from Jones's body camera showed that Jones told Dudley, "If you don't sign it, you go to jail."

confusing the jury:  it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Lee*, 415 S.W.3d at 917).

"The level of harm necessary to require reversal due to jury charge error is dependent upon whether the appellant properly objected to the error." *Id.* at 555 (citing *Abdnor*, 871 S.W.2d at 732).  When the defendant "did not object to the charge, we will not reverse [the judgment] unless the record shows the error resulted in egregious harm." *Id.* (citing *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005)).  "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)).  "In making this determination, we review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole.'" *Id.* (quoting *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed)).  "Direct evidence of harm is not required to establish egregious harm." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).  That said, "the record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury instruction error." *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005) (citing *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999)).

## III.    Analysis

### A.    Dudley Was Not Harmed by the Application-Paragraph Error

In her first issue, Dudley complains that she was egregiously harmed because of the trial court's erroneous application paragraph.  The relevant statute in this case provides,

4

> A person commits an offense if [s]he intentionally prevents or obstructs a person [s]he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

TEX. PENAL CODE ANN. § 38.03(a). Thus, the statute provides three manners and means by which a person can commit the offense, i.e., by intentionally preventing or obstructing a person she knows to be a peace officer, or a person acting at his direction, from effecting (1) an arrest, (2) a search, or (3) transportation. *See Clement v. State*, 248 S.W.3d 791, 801 (Tex. App.—Fort Worth 2008, no pet.); *Finster v. State*, 152 S.W.3d 215, 219 (Tex. App.—Dallas 2004, no pet.); *Hartis v. State*, 183 S.W.3d 793, 799 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

In this case, the information alleged only one manner and means by which Dudley committed an offense: by "intentionally prevent[ing] or obstruct[ing] Darren Jones, a person [Dudley] knew to be a peace officer, from effecting an arrest of [Dudley], by using force against said peace officer." Nevertheless, the application paragraph of the jury charge authorized the jurors to find Dudley guilty if they found beyond a reasonable doubt that she "did then and there intentionally by using force against or in opposition to Darren Jones, prevent or obstruct Darren Jones, a person [Dudley] knew to be a peace officer, from effecting the arrest, search or transportation of the said [Dudley]." Because the application paragraph authorized conviction on both the theory alleged in the indictment (preventing or obstructing arrest), and on two theories not alleged in the indictment (preventing or obstructing search or transportation), the State concedes that this was jury-charge error. *See Nunez v. State*, 215 S.W.3d 537, 542 (Tex. App.—Waco 2007, pet. ref'd) (citing *Flores v. State*, 48 S.W.3d 397, 402 (Tex. App.—Waco 2001, pet.

5

ref'd) ("A jury charge is fundamentally defective when it . . . authorizes conviction on the theory alleged in the indictment and on additional unalleged theories . . . .")). We agree.

"An erroneous or incomplete jury charge, however, does not result in automatic reversal of a conviction." *Abdnor v. State*, 871 S.W.3d 726, 731 (Tex. Crim. App. 1994); *see* TEX. CODE CRIM. PROC. ANN. art. 36.19 (In a review of jury-charge error, "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial."). For that reason, we determine whether Dudley was reversibly harmed by the error.

The abstract portion of the jury charge also provided that a person may be convicted for the offense "if she intentionally prevents or obstructs a person she knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another." Likewise, the verdict form tracked the language of the application paragraph. As a result, the jury charge in its entirety authorized a conviction if the jury found Dudley intentionally prevented or obstructed Jones from effecting either an arrest, a search, or transportation. For that reason, we find that this factor weighs in favor of harm.

Dudley argues that, because Jones told her if she refused to sign the ticket she would go to jail, this was evidence upon which the jury could find that she resisted transportation, not arrest. However, Jones's testimony and the body-camera evidence showed that Dudley pulled her arms away, resisted Jones's efforts to place her arms behind her back, and twisted her body in response to Jones's efforts to restrain her to place her under arrest. Jones did not testify, and

6

no other evidence showed, that Dudley in any way resisted her transport to jail once the arrest was made. Further, there was no evidence that Dudley resisted any search of her vehicle. We find that the state of the evidence weighs against any harm.

In its closing argument, the State recounted the reason for Dudley's arrest, paraphrased Jones's warnings that he would have to take her to jail if she did not sign the ticket, and highlighted Dudley's multiple refusals to sign. The State then argued, "That's the reason for the arrest," and recounted the evidence that showed Dudley's resistance to the arrest. Dudley argued that she had not used force to resist the arrest. We find that the parties' emphasis of whether Dudley resisted arrest weighs against any harm.

In voir dire, both the State and Dudley emphasized that the State's burden was to show that Dudley obstructed Jones from arresting her by using force. Also, in its opening statement, the State informed the jury that the evidence would show that Dudley did not want to be arrested and the different ways that she resisted arrest. Dudley also spoke to the jury about what happened before she was arrested. This also weighs against any harm.

Based on our review of this record, we find that Dudley was not egregiously harmed by the jury-charge error. We overrule this issue.

## B. Dudley Was Not Entitled to a Lesser-Included-Offense Instruction

At the conclusion of the evidence, Dudley requested that the trial court include an instruction on a lesser-included offense, interference with public duties, which the trial court

7

denied.[3] Dudley complains that the trial court erred by not including the lesser-included-offense instruction in its jury charge.

### 1.    Applicable Law and Standard of Review

Our review of alleged jury-charge error requires us to first determine whether error occurred. *Murrieta*, 578 S.W.3d at 554. To determine if there was jury-charge error, we determine whether the trial court was required to give the requested lesser-included-offense instruction. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). "We review a trial court's refusal to submit a [lesser-included-offense] instruction for an abuse of discretion." *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023) (citing *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004)).

"Whether a defendant is entitled to a [lesser-included-offense] instruction turns on a two-part test." *Id.* (citing *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993)). "First, we compare the statutory elements of the alleged lesser offense with the statutory elements of the greater offense and any descriptive averments in the indictment." *Id.* (citing *Safian v. State*, 543 S.W.3d 216, 220 (Tex. Crim. App. 2018)). In this part, we ask "whether the lesser-included offense is included within the proof necessary to establish the offense charged." *Safian v. State*, 543 S.W.3d 216, 219–20 (Tex. Crim. App. 2018) (quoting *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011)). "If proof of the lesser offense is included within proof of the greater offense, the first step has been satisfied." *Chavez*, 666 S.W.3d at 776 (citing *Safian*, 543 S.W.3d at 220; TEX. CODE CRIM. PROC. ANN. art. 37.09(1)).

---

[3]*See* TEX. PENAL CODE ANN. § 38.15(a)(1).

"Second, there must be evidence from which a rational jury could find the defendant guilty of only the lesser offense." *Id.* (citing *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006)). "[T]he guilty-only requirement is met if there is affirmative evidence of a factual dispute that raises the lesser offense and rebuts or negates other evidence establishing the greater offense." *Id.* (citing *Roy v. State*, 509 S.W.3d 315, 317 (Tex. Crim. App. 2017)). "It does not matter if the factual dispute is based on direct or circumstantial evidence so long as a rational jury could interpret the record in a way in which it could find the defendant guilty of only the lesser-included offense." *Id.* (citing *Roy*, 509 S.W.3d at 319; *Goad v. State*, 354 S.W.3d 443, 447–49 (Tex. Crim. App. 2011)). "We consider all the evidence admitted at trial." *Id.* at 776–77 (citing *Goad*, 354 S.W.3d at 448). "Even a scintilla of evidence is sufficient, no matter how controverted or incredible." *Id.* at 777 (citing *Goad*, 354 S.W.3d at 446–47). Further, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Ransier v. State*, 670 S.W.3d 646, 650 (Tex. Crim. App. 2023) (quoting *Bullock*, 509 S.W.3d at 925). For that reason, the Texas Court of Criminal Appeals has "stated that the standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Bullock*, 509 S.W.3d at 925 (quoting *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011)); *see Ransier*, 670 S.W.3d at 650.

9

### 2. Analysis

Because the parties do not dispute that interference with public duties is a lesser-included offense of resisting arrest under the first part of the test, we will assume that it is a lesser-included offense in this case and analyze only the second part of the lesser-included-offense test. *See Chavez*, 666 S.W.3d at 777. Under the indictment, the elements that the State was required to prove under the charged offense were that Dudley (1) intentionally (2) prevented or obstructed (3) Jones, (4) whom she knew to be a police officer, (5) from effecting an arrest of Dudley (6) by using force against Jones. *See* TEX. PENAL CODE ANN. § 38.03(a). As applicable to this case, the elements of interference with public duties were that Dudley, (1) with criminal negligence, (3) interrupted, disrupted, impeded, or otherwise interfered with (4) a peace officer, Jones, (5) while Jones was performing a duty or exercising authority imposed or granted by law. *See* TEX. PENAL CODE ANN. § 38.15(a)(1).

In addition to requiring proof of a greater culpable mental state[4] than interference with public duties, resisting arrest requires the proof of an additional element, i.e., the use of force against the officer. Dudley points to the following portions of Jones's testimony:

> [O]nce she refused the second time to sign the citation, I had to make an arrest. When I went to lay hands to get her hands behind her to where I could start cuffing her, she immediately started kind of pulling away from me, strong-arming, locking her arms down and not letting me move her. I do everything I can to not hurt her. I have to make the arrest, but I don't have to be -- I don't have to use excessive force, if that makes sense. I'm trying to use as little force as I have to to place her in cuffs. She is pulling away from me. I do have to grip a little hard on her hands and make sure she don't get away from me. But --. And

---

[4]*See* TEX. CODE CRIM. PROC. ANN. art 37.09(3) (providing that "[a]n offense is a lesser included offense if . . . it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission").

10

that's why I've got her up against the car. I finally get her hands behind her back. I have her leaned up against the car. And I go --. I tell her to relax, and I go to get my handcuffs that were at my back. And when I go to get my handcuffs, my hands are at my back, she slips her left arm out -- or her arm out and reaches up. I assume reaches for her phone. At that time, I had to basically get control. And that's why I had to take her -- place her on the ground where I would have more control of her movements. I was able to place her into handcuffs there.

And to the following exchange:

> Q.      [(By the State)]  And then when you went to effect arrest on her, is that when she began to fight you?

> A.      She began to pull away from me by strong-arming, by stiff-arming, which is when I had to finally get her hands behind her back.

Dudley argues that the jury could have only believed the first part of Jones's statement, i.e., that Dudley pulled away from him, which, she argues, would support a conviction for interference with public duties, as opposed to a conviction for resisting arrest that requires the use of force. We disagree.

Dudley's argument is premised on the assumption that pulling away from an officer who is attempting to make an arrest is not using force against the officer. However, under facts similar to the facts in this case,[5] the Texas Court of Criminal Appeals held that pulling away from officers while they were effecting an arrest constituted the "use of force against the officer" requirement of resisting arrest. *Finley*, 484 S.W.3d at 928. We have also held that, "when the defendant actively pulls against an officer's established grasp of the defendant during an arrest attempt," the "use of force against an officer" element of resisting arrest is satisfied. *Pumphrey*

---

[5]In *Finley*, the officer testified that, when he grabbed Finley's arm to place behind his back, "Finley failed 'to cooperate and pull[ed] his arms away from [them].' Specifically, Officer Connor testified that Finley tensed up and pulled his arms away from the arresting officers and towards Finley's abdomen." *Finley v. State*, 484 S.W.3d 926, 927 (Tex. Crim. App. 2016) (first alteration in original).

11

*v. State*, 245 S.W.3d 85, 89 (Tex. App.—Texarkana 2008, pet. ref'd) (footnote omitted) (citation omitted).

Because pulling away from an officer's attempt to make an arrest satisfies the "use of force" requirement of resisting arrest, a rational jury could not find that Dudley was guilty only of interference with public duties. *See Chavez*, 666 S.W.3d at 776. As a result, Dudley was not entitled to a lesser-included-offense instruction. For that reason, we find that the trial court did not abuse its discretion in refusing to submit a lesser-included-offense instruction in its jury charge. We overrule this issue.

## IV.     Conclusion

For the reasons stated, we affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     November 7, 2023
Date Decided:       November 15, 2023

Do Not Publish